IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Curtis Q. Owens, | C/A No.: 1:10-949-TLW-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Helen Freeman, Mail Clerk Inst., in her individual capacity, | |
| Defendant. | |

Plaintiff, proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Allendale Correctional Institution ("ACI"), a facility of the South Carolina Department of Corrections ("SCDC"). Before the court is Defendant's Motion for Summary Judgment [Entry #19]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge. Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Plaintiff filed his complaint on April 15, 2010, alleging that Defendant has held, delayed, tampered with, and confiscated his mail and has otherwise denied him access to the courts. *See* Compl. [Entry #1]. Defendant filed her motion for summary judgment on October 26, 2010. [Entry #19]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

1975), Plaintiff was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's motions. [Entry #20]. Plaintiff filed a timely response on November 30, 2010. [Entry #23]. Having carefully considered the parties' submissions and the applicable law, the undersigned recommends that Defendant's motion for summary judgment be granted.

II.     Discussion

   A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id*. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

    B.    Analysis

        1.    Alleged Mail Tampering

Plaintiff generally claims that Defendant has held, delayed, tampered with, and confiscated his mail. However, Plaintiff has not provided any details regarding a specific incident of mail tampering. Plaintiff has attached grievances and request to staff forms that indicate he has complained about various incidents, but he provides no greater detail and does not show how he has been injured by Defendant's alleged violations of the mail system.

The Fourth Circuit has held that the opening and inspection of an inmate's mail is reasonably related to legitimate penological interests, and therefore, constitutional. *Altizer v. Deeds*, 191 F.3d 540, 547–548 (4th Cir.1999). However, in a footnote, the court also noted that "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n. 14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). To establish that Defendant

violated his rights, Plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or his counsel. *Lewis v. Casey*, 518 U.S. 343 (1996); *see also Lloyd v. Vincent*, C.A. No. 4:03–1546–25H, 2004 WL 3249250, *4 (D.S.C.2004) ("To state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequences as a basis for the allegation that the delay or nondelivery deprived him of meaningful access to the courts.").

Here, Plaintiff has set forth only conclusory allegations that Defendant's actions have compromised his legal matters, but he states no specific adverse consequences. Plaintiff does not provide any details, such as a specific filing deadline he missed in a pending case, to show that a specific case has been compromised, nor does he provide any details about the mail allegedly delayed or confiscated. Therefore, because Plaintiff has failed to allege any harm or adverse consequences, it is recommended that Defendant be granted summary judgment.

    2.    Denial of Access to the Courts

Plaintiff repeatedly alleges Defendant has denied him access to the courts. Specifically, Plaintiff appears to question Defendant's authority to limit the amount of mail he sends, both legal and otherwise. For instance, Plaintiff claims the mail "policy does not give Defendant [any] authority to monitor how many pre-paid envelopes prisoners obtain . . . ." [Entry #23 at 3]. Additionally, Plaintiff appears to challenge Defendant's limit on the amount of mail Plaintiff may send in an attempt to obtain

counsel, as he states: "I personally do believe [Defendant] has confiscated my legal correspondence to prevent me from obtaining legal coun[sel]." *Id*. at 6.

It is well-settled that prison administrators must provide inmates with adequate access to the courts and that such access includes sufficient postage for indigent inmates. *See generally, Bounds v. Smith*, 430 U.S. 817 (1977). However, "[i]t is well settled that '[p]risoners do not have an unlimited right to free postage in connection with the right of access to the courts. Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations.'" *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (citing *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978)). The United States Supreme Court has held that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

It appears that Plaintiff's complaints are based on a misunderstanding of the SCDC mail policy. The policy provides that if an indigent inmate requires additional postage to mail out legal mail, the inmate will be provided that postage, but first must show that he or she has an ongoing lawsuit or is seeking to commence a lawsuit. *See* PS-10.08 Inmate Correspondence Privileges. [Entry #19-4]. To prevent inmates from abusing the indigent mail system, the item of mail may be inspected to ensure it is actually legal mail. Inmates are permitted to send an unlimited amount of legal mail to officials of federal, state, and local courts, attorneys of record, judges of federal, state, and local courts, and the South Carolina Attorney General. *Id.* An indigent inmate may send legal mail to other

5

recipients, but will be required to utilize the envelopes provided to inmates on a limited basis for general use. *Id*. Therefore, if Plaintiff wished to send mail to try to obtain counsel for his legal matters, he must use the envelopes provided to him for general use, and is not entitled to additional envelopes or postage. *Id*.

In assessing the constitutionality of a prison policy or regulation, the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89. The burden of proof under the *Turner* analysis is not on the governmental entity; the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton*, 539 U.S. at 132. In applying the *Turner* factors, the Supreme Court further directed that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. *Overton*, 539 U.S. at 132.

Here, SCDC has established a policy that seeks to balance the need of providing indigent inmates with sufficient postage to access the courts, with the financial burden and budgetary concerns associated with the prisoners' abuse of the indigent inmate mail system. Plaintiff has failed to demonstrate that the SCDC's legal mail policy is unconstitutional. It balances the right of inmates to court access with the legitimate penological interest of reducing abuses of the indigent mail system causing budgetary concerns. In addition, Plaintiff has not provided any evidence that Defendant has

enforced greater restrictions on the mail than policy provides. Therefore, because Plaintiff has failed to show that the SCDC mail policy is unconstitutional, or that Defendant has violated the policy, Defendant is entitled to summary judgment.

### 3. Qualified Immunity

Defendant also asserts that she is entitled to qualified immunity in her individual capacity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist."

*Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendant is entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendant, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendant, and therefore, the existence of a constitutional deprivation, Defendant is still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, Defendant performed the discretionary functions of her official duties in an objectively reasonable fashion. She did not transgress any statutory or constitutional rights of Plaintiff that she was aware of in the discretionary exercise of their respective professional judgments.

Thus, to the extent the district judge finds that a constitutional violation occurred, Defendant is entitled to qualified immunity.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment [Entry #19] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

July 13, 2010                                                               Shiva V. Hodges
Florence, South Carolina                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**